UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NOEL GELER,

                        Petitioner,

    v.

TODD BLANCHE et al.,[1]

                        Respondents.

CASE NO. 2:26-cv-00481-LK

ORDER GRANTING IN PART
AND DENYING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

This matter comes before the Court on Petitioner Noel Geler's petition for a writ of habeas corpus. Dkt. No. 3. For the reasons described below, the Court grants the petition in part and denies it in part.[2]

## I.    BACKGROUND

Geler is a native and citizen of Haiti who is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 3 at 1; Dkt. No. 8 at 1. In April

---

[1] Acting Attorney General Todd Blanche is substituted in his official capacity for Pamela Bondi. Fed. R. Civ. P. 25(d).

[2] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

2022, U.S. Customs and Border Protection ("CBP") encountered Geler in Arizona near the border, "determined he had unlawfully entered the United States as a member of a family unit, and apprehended him for further processing." Dkt. No. 8 at 2. CBP issued Geler a Notice to Appear ("NTA"), charging him as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") and scheduling him to appear before an immigration judge in removal proceedings. *Id.*; *see also* Dkt. No. 9-1 at 2 (the NTA stating that he is "an alien present in the United States who has not been admitted or paroled").

On April 18, 2022, Geler was released on an Order of Release on Recognizance ("OREC"), which imposed reporting requirements and other conditions of release, including that he "not violate any local, State, or Federal laws or ordinances." Dkt. No. 8 at 2; Dkt. No. 9-3 at 2 (the OREC); *see also* Dkt. No. 9-5 at 3 (notice of custody determination). Geler subsequently filed for asylum and withholding of removal, Dkt. No. 9-2 at 4, and for temporary protected status ("TPS"), Dkt. No. 8 at 2. His TPS status expired on August 3, 2024. *Id.* He has applied again for TPS status, and his application remains pending. *Id.* In June 2025, the Department of Homeland Security announced the termination of TPS for Haitians with an intended termination date of February 3, 2026. *Id.* That termination decision has been stayed by court order. *Miot v. Trump*, No. 25-cv-02471 (ACR), 2026 WL 266413 (D.D.C. Feb. 2, 2026), *cert. granted before judgment*, No. 25-1084, 2026 WL 731087 (U.S. Mar. 16, 2026).

On June 20, 2024, the Des Moines Police Department arrested Geler for assault, domestic violence, and exposing a minor to domestic violence. Dkt. No. 8 at 2. He was subsequently convicted, sentenced to 364 days incarceration, received a suspended sentence of 356 days, and a protection order was issued against him. *Id.*; Dkt. No. 9-2 at 4.

On June 5, 2025, Geler's partner notified the Seattle Office of United States Immigration and Customs Enforcement ("ICE"), Office of Enforcement and Removal Operations ("ERO") of

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

the protection order against Geler. Dkt. No. 8 at 2; Dkt. No. 9-2 at 5. On June 18, 2025, when Geler reported to Seattle ERO, "ERO determined [he] would be taken into custody based on [his] criminal history which ERO deemed a violation of his OREC." Dkt. No. 8 at 2. Geler was then transported to the NWIPC. *Id.*

Geler agrees that he was arrested in June 2024 "on D.V. charges" and imprisoned for eight days. Dkt. No. 3 at 3. According to Geler, after he was released from prison, "he continued to comply with ICE probation until he was arrested by DHS/ICE on June 2025 during his usual ICE-appointments." *Id.* He contends that the government unlawfully revoked his "immigration probation" in June 2025, and he has been detained since that time. *Id.* at 1–2.

On October 15, 2025, Geler's application for relief was denied by an immigration judge, and he was ordered removed to Haiti. Dkt. No. 8 at 3. Geler appealed his case to the Board of Immigration Appeals ("BIA"), and the BIA accepted but dismissed his appeal. *Id.*

Geler subsequently filed a Petition For Review ("PFR") with a motion for a stay with the Ninth Circuit Court of Appeals. *Id.* An automatic stay of removal is in effect. *Id.*; *see also Geler v. Bondi*, No. 26-832, Dkt. No. 6 (9th Cir. Feb. 11, 2026). Geler has not had a bond hearing and is not currently scheduled for one. Dkt. No. 8 at 3.

## II.   DISCUSSION

In this habeas petition, Geler contends that Respondents violated his rights to procedural and substantive due process "when they failed to provide him a pre-deprivation hearing by an impartial decision-maker before OSUP revocation." Dkt. No. 3 at 3. As relief, he seeks (1) immediate release, (2) an injunction preventing the government from re-detaining him "unless they provide him a pre-deprivation hearing before an impartial decision-maker," and (3) any other relief the Court finds just and equitable. *Id.* at 5. The Government responds that the petition should

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

be denied because Geler is subject to mandatory detention under Section 1225(b), and he was not entitled to a pre-deprivation hearing. Dkt. No. 7 at 1–2.

## A.      Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation

proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.      Geler Has Established a Due Process Violation**

Like many petitions before the Court, Geler does not set forth what statutory provision governs his detention, and instead argues that due process entitles him to the relief he requests. *See generally* Dkt. No. 3. However, the Ninth Circuit has rejected the proposition that due process demands the same procedures no matter which detention statute applies to a non-citizen. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Id.*; *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

    1.   Process Required by Statute

       *(a) 8 U.S.C. § 1226(a) is the Applicable Statutory Authority*

Respondents aver that Geler is subject to mandatory detention 8 U.S.C. § 1225(b) regardless of whether subsection (b)(1) or (b)(2) applies. Dkt. No. 7 at 2–5, 10. Section 1225 applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there

are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

Respondents acknowledge that courts in this District have rejected their argument that noncitizens in Geler's position are detained pursuant to Section 1225(b). Dkt. No. 7 at 7 (citing *Aslan v. Wamsley*, No. 2:25-cv-02698-JNW, 2026 WL 238675, at *2 (W.D. Wash. Jan. 29, 2026)). This Court agrees with the reasoning of *Rodriguez Vazquez* and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)— apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1322–23 (W.D. Wash. 2025). "[I]f the Court were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Id.* at 1324–25; *see also Cunha v. Freden*, No. 25-3141-PR, 2026 WL 1146044, at *3–9 (2d Cir. Apr. 28, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138–41 (8th Cir. 2026) (Erickson , J., dissenting). Furthermore, had Congress had wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 510–11 (5th Cir. 2026) (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,'

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 6

the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)). The government has treated Geler as subject to discretionary detention under 8 U.S.C. § 1226 from his arrival in the United States until his June 2025 detention. Specifically, after Geler entered the United States in April 2022, he was released on an OREC pursuant to "section 236 of the Immigration and Nationality Act," Dkt. No. 9-3 at 2, which is codified at 8 U.S.C. § 1226, *see Diouf v. Mukasey*, 542 F.3d 1222, 1227 (9th Cir. 2008). His notice of custody determination also stated that he was released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act [(8 U.S.C. § 1226)]," Dkt. No. 9-5 at 3. Nothing in the record suggests that Geler's release was pursuant to Section 1225(b). These facts demonstrate that his detention is governed by 8 U.S.C. § 1226 rather than 8 U.S.C. § 1225.

### (b) Procedures Required under 8 U.S.C. § 1226(a)

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Id.* at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a

noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197. In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197; *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075-TMC, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 8

has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

   2.   Due Process Requirements

Geler contends that Respondents violated his due process rights by failing to "provide him a pre-deprivation hearing by an impartial decision-maker before OSUP revocation." Dkt. No. 3 at 3. Respondents counter that Geler was not entitled to a pre-deprivation hearing under the *Mathews* factors. Dkt. No. 7 at 10–13.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

   (a) *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

"proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after briefly detaining Geler in 2022, DHS released him on his own recognizance "pending a final administrative determination in [his] case[.]" Dkt. No. 9-5 at 3. Geler has spent the vast majority of his years in the United States released on the OREC. He has two children who are present in the United States, including one who is a U.S. citizen. Dkt. No. 9-2 at 5. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

Respondents argue that Geler's liberty interest "was always conditional both on the progression of his removal proceedings, compliance with certain conditions, and adherence to state, local, and federal laws." Dkt. No. 7 at 11. On this front, they argue that his "liberty interest was lessened due to his criminal conviction[]." *Id.* The Court agrees that, given the OREC's requirement that Geler "must not violate" any laws, Dkt. No. 9-3 at 2, and his post-OREC criminal conviction, Dkt. No. 9-2 at 4, Geler's liberty interest in being free from custody "is not as strong

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

as it would be for an individual without any showing of material changed circumstance[.]" *Quinonez Torres v. Hermosillo*, No. 2:26-cv-00076-TLF, 2026 WL 547591, at *9 (W.D. Wash. Feb. 23, 2026) (evaluating a charge for assault against a family or household member); *see also Tabares Reyes v. Hernandez*, No. 2:26-cv-00633-GJL, 2026 WL 820481, at *3 (W.D. Wash. Mar. 25, 2026) (evaluating a misdemeanor conviction for assault); *Orozco Valle v. Scott*, No. 2:25-cv-02429-JNW-TLF, Dkt. No. 15 at 11–12 (W.D. Wash. Jan. 5, 2026) (evaluating a post-release conviction for violating a no-contact order).

       *(b) Procedural Protections*

       To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

       With respect to the first factor, as discussed above, Geler has an interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Geler has an interest in the government adhering to the requirement not to re-detain him absent (1) a revocation made by an appropriate official and (2) a material change in circumstances.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11

This factor favors Geler, though as set forth above, it does not weigh strongly given the materially changed circumstances (i.e., his criminal conviction) and his release condition requiring compliance with all laws.

Turning to the second factor, Geler argues that "he was never given a pre-deprivation hearing before an impartial decision-maker as required by due process." Dkt. No. 3 at 3. Indeed, because Respondents purported to detain Geler under 8 U.S.C. § 1225(b), he effectively had no opportunity to demonstrate why he should be released on bond. Again, the government's stated view is that noncitizens previously subject to discretionary detention under 1226(a) are now subject to mandatory detention with no right to a hearing under section 1225(b), Dkt. No. 7 at 7, and this erroneous position undergirds any decision to detain a noncitizen like Geler who was previously subject to 1226(a). "The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioners without any individualized showing of why their detention is warranted, nor any process for Petitioners to challenge the exercise of that discretion." *Escobar Salgado v. Mattos*, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356, at *24 (D. Nev. Nov. 17, 2025).

The additional procedures afforded under Section 1226(a), including an individualized custody redetermination by an immigration judge, would substantially mitigate the risk of erroneous deprivation of Geler's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. *See* Dkt. No. 7 at 6 (Respondents' brief acknowledging that the regulations implementing Section 1226(a) permit a noncitizen to request a bond hearing "at any time" before a final order of removal is issued). An adverse decision by an immigration judge in a bond hearing can further be appealed, and Geler could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [him] the opportunity to be

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 12

heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). Respondents argue that in light of Geler's conviction, "requiring advance notice and a hearing would have been impracticable and would have undermined the government's ability to respond to those changed conditions." Dkt. No. 7 at 11. However, Respondents cite nothing to support that contention. And although Geler's form I-213 notes the criminal conviction, it does not specifically state that the conviction prompted his re-detention or necessitated doing so immediately. *See generally* Dkt. No. 9-2. This factor weighs in favor of Geler.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. "These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures." *Escobar Salgado*, 2025 WL 3205356, at \*25. The Court can identify no reason that an individualized hearing would interfere with the government's interests. Therefore, the Court finds that this factor too weighs in favor of Geler. As a result, Geler is entitled to habeas relief for his due process claim.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

**C.      Remedy**

Respondents argue that in light of Geler's criminal conviction, the appropriate remedy for any due process violation is a post-deprivation bond hearing. Dkt. No. 7 at 11–12. The Court agrees; Geler's criminal conviction constitutes materially changed circumstances.

The specific harm faced by Geler is his detention for months without a bond hearing pursuant to Section 1226(a). "The Court finds that harm is remedied by ordering a bond hearing within seven days," and "[g]iven the due process rights at stake, if a bond hearing is not provided promptly within that time frame, Petitioner[] shall be immediately released" on the terms of his most recent OREC. *Escobar Salgado*, 2025 WL 3205356, at *26; *see also Martinez Flores v. Kaiser*, No. 1:26-CV-00582-KES-CDB (HC), 2026 WL 482739, at *9 (E.D. Cal. Feb. 20, 2026) (ordering same); *Solano Gallardo v. Warden*, No. 5:26-CV-00485-SSS-BFM, 2026 WL 483207, at *1 (C.D. Cal. Feb. 20, 2026) (ordering same); *Araiza v. Hermosillo*, No. 2:25-CV-02139-TL, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (ordering same); *see also Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) ("In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008))).

Geler has not requested that the Court order a specific burden of proof at a bond hearing. *See generally* Dkt. No. 3. Section 1226(a) is silent as to which party bears the burden of proof or by what standard at a bond hearing. The implementing regulations likewise do not identify who shoulders what burden, simply stating that both parties may present evidence. *See* 8 C.F.R. § 1003.19(d) (2025) ("The determination of the Immigration Judge as to custody status or bond may be based upon any information . . . that is presented to him or her by the [noncitizen] or the Service."). The Supreme Court also has not clarified the burden. *See* Sharon Shaji, Note, *The Due*

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

*Process Owed to Noncitizens*, 44 Cardozo L.R. 1635, 1638 (2023) ("In the absence of guidance from the Supreme Court, federal circuit courts of appeals have produced a variety of approaches to burden of proof allocation in § 1226(a) bond hearings.").

As the Court discussed in *Balwan v. Bondi*, "[t]he federal appellate courts that have the addressed this question are split" and the Ninth Circuit has not provided an answer directly on point. No. 2:26-cv-00248-LK, 2026 WL 497098, at *9 (W.D. Wash. Feb. 23, 2026). The Court need not address whether as a general matter, a noncitizen detained under Section 1226(a) is entitled to a hearing at which the government is required to prove by clear and convincing evidence that the noncitizen is a danger to the community or a flight risk, because it determines that under the particular and unique circumstances here, *Mathews* requires such a hearing. *See Singh v. Noem*, No. 2:26-cv-00246-BAT, 2026 WL 592265, at *3 (W.D. Wash. Mar. 3, 2026) (noting circuit split on evidentiary standard for post-deprivation bond hearings and concluding it was "reasonable" to impose clear and convincing evidence standard to remedy due process violation).

**D.      Geler's Request for a Permanent Injunction is Denied**

Finally, Geler requests an order "enjoin[ing] respondents from re-detaining him unless they provide him a pre-deprivation hearing before an impartial decision-maker." Dkt. No. 3 at 5. Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941-42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S.

629, 633 (1953)). Nowhere in Geler's petition does he allege that re-detention is likely if he were to be released or that such detention is likely to occur without compliance with the government's regulations or policies. Without argument or evidence that those outcomes are likely to occur, Geler's request constitutes nothing more than a "mere possibility" of harm that do not entitle him to relief. *Id.* For these reasons, the Court denies his request for injunctive relief regarding potential future re-detention.

### III.   CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 3, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1.   Respondents must provide Geler with a bond hearing under Section 1226(a) before an immigration judge within seven days of the date of this Order. At the hearing, the government bears the burden of proving by clear and convincing evidence that Geler is a danger to the community or a flight risk. Respondents must ensure that the hearing is recorded. Respondents are enjoined from denying bond to Geler on the basis that he is detained pursuant to 8 U.S.C. § 1225(b).

2.   If a bond hearing is not provided within seven days of the date of this Order, Geler shall be released from ICE custody immediately on the terms of his most recent OREC or other terms consistent with Section 1226(a). Respondents must file a Status Report with the Court either confirming that Geler received a bond hearing— and the results of that hearing—or otherwise confirming his release by May 18, 2026.

3.   If the immigration judge does not order Geler released, Respondents are prohibited from transferring Geler from this jurisdiction—i.e., the Western District of Washington—for seven days following the immigration judge's decision, unless

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 16

such transfer is necessary for medical evaluation, medical treatment, release, or extenuating circumstances;

In addition, the Court denies Geler's motion to defer payment of the filing fee, Dkt. No. 4, as moot because he has paid the filing fee, *see* March 3, 2026 Docket Entry.

Dated this 7th day of May, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 17